IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAHEEM LOUIS-El, | : Civil No. 3:18-cv-0877 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| DAVID J. EBBERT, | : |
| Defendant | : |

## MEMORANDUM

### I. Background

On April 23, 2018, Plaintiff, Raheem Louis-El, an inmate who, at all relevant times, was housed at the United States Penitentiary, Lewisburg, Pennsylvania, initiated this action pursuant to 28 U.S.C. § 1331. (Doc. 1). Named as the sole Defendant is Warden David J. Ebbert. *Id.* Plaintiff's complaint states in toto:

> This is a claim of assault and racial discrimination by Bureau of Prison employee K. Solomon, occurring on April 15, 2018 between approximately 7:00 pm to 10:00 pm at USP-Lewisburg. This officer shove me into my cell while I was handcuffed behind my back and the video footage in (B2) Block will verified this.
>
> I hereby motion the court to put a restraining order on the BOP specifically at USP-Lewisburg to not destroy the camera footage. I also motion this court to subpoena Officer K. Solomon's disciplinary record. I also motion the court for a restraining order to prevent USP-Lewisburg staff from obstructing the prison the prison grievance procedure. He has been written up by prisoners several times for racial discrimination. Also, this institution and its officers are known for using excessive force against Moorish Americans (sometimes referred to as African Americans). See Anthony Meneyham v. United States of American, 3:17-cv-2350.

> I also ask for punishment against Officer K. Solomon fo the fullest extent of the law. If there is no penalty imposed then the officer's actions are justified which is why this issue and others are ongoing! Penalties imposed shows and verifies by action that the judicial system does not tolerate racial discrimination nor assaults by officers based on race which constitutes a hate crime!
>
> If the Courts do not intervene and fix this problem which has been ongoing for years, then the courts are okaying the racial discrimination and assault being complained of because the Bureau of Prison has shown that they will not do anything about this problem. I hereby invoke 18 U.S.C. section 241!

*Id.* For relief, Plaintiff seeks $25,000.00 in damages. *Id.*

Presently pending before the Court is Defendant's motion for summary judgment.[1] (Doc. 28). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant Defendant's motion.

## II. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,*

---

[1] By Order dated June 13, 2019, the Court provided notice to the parties that Defendant's motion to dismiss and for summary judgment (Doc. 28) would be treated solely as a motion for summary judgment, and the Court placed the parties on notice that it may consider exhaustion in its role as fact finder under *Small v. Camden County,* 728 F.3d 265 (3d Cir. 2013). (Doc. 40) (citing *Paladino v. Newsome,* 885 F.3d 203 (3d Cir. 2018)). The Order also afforded the parties the opportunity to supplement the record with any additional supporting evidence relevant to exhaustion of administrative remedies. *Id.*

477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Statement of Undisputed Facts

The Bureau of Prisons (BOP) has an administrative remedy procedure with respect to inmate complaints, namely 28 C.F.R. § 542.10, *et seq*.

The BOP's Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. § 542.10(a). Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff on an Informal Resolution Attempt form commonly referred to as a BP-8. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative

4

Remedy, commonly referred to as a BP-9.[2] 28 C.F.R. § 542.14. The deadline for completion of the BP-8 and submission of the BP9 is twenty days from the date of the event which is the subject of the remedy. *Id.*

If the inmate is not satisfied with the warden's response, he has twenty days from the date of the response, to file a BP-10, Regional Administrative Remedy Appeal, with the Regional Director. 28 C.F.R. § 542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file, within thirty days of the response, a Central Office Administrative Remedy Appeal or BP-11 with the BOP's General Counsel. 28 C.F.R. § 542.15(a). An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. 28 C.F.R. § 542.14(b).

On November 29, 2018, a search of the BOP's computerized records was conducted and revealed that Louis-El had filed a total of twenty-seven administrative remedies since confined in BOP custody. (Doc. 36-1 at 8-20, Administrative Remedy Generalized Retrieval). From April 15, 2018, the date of the alleged incident, through November 29, 2018, the date the search was conducted, Louis-El filed fifteen administrative remedies. *Id.* The fifteen administrative remedies filed between April 15, 2018, and November 29, 2018, relate to an incident report; a DHO appeal; mail; mail monitoring; the law library; a request

---

[2] An exception is made for appeals of discipline hearing officer decisions, which are raised directly to the Regional Director, rather than the warden, and then to the Central Office level. 28 C.F.R. § 542.15(d).

for the warden to review a DHO appeal and special mail; being moved; property; a DHO hearing; legal; mail issues; and food. (*See* Doc. 36-1 at 13-20). There are no administrative remedies concerning allegations that Plaintiff was shoved into his cell while handcuffed behind his back on April 15, 2018, or that he was subjected to racial discrimination or excessive force.

## IV. Discussion

A *Bivens*[3] action is the federal counterpart to an action filed under 42 U.S.C. § 1983. *See Paton v. LaPrade*, 524 F.2d 82 (3d Cir.1975); *Farmer v. Carlson*, 685 F. Supp. 1335, 1338 (M.D.Pa. 1988). Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

---

[3] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendant Ebbert seeks an entry of judgment in his favor on the following grounds: (1) Plaintiff failed to properly exhaust his administrative remedies prior to filing suit; and (2) Defendant Ebbert lacks personal involvement in the alleged constitutional violations and respondeat superior cannot form the basis of a Bivens action. (Doc. 35).

### A. Exhaustion

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 92. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

As stated, a search of BOP records was conducted for any administrative remedies filed by Plaintiff from his arrival at USP-Lewisburg through November 29, 2018. Although this search revealed that Plaintiff filed a total of twenty-seven administrative remedies since held in BOP custody, none of these administrative remedies concern the alleged April 15, 2018 incident between employee K. Solomon and Plaintiff.

Plaintiff acknowledges that he has failed to exhaust administrative remedies prior to filing the instant action. (Doc. 44). Without providing more, and against the backdrop of having been able to file twenty-seven administrative remedies, fifteen of which were filed subsequent to the April 15, 2018 incident date, Plaintiff states that "due to the fact that the

8

USP-Lewisburg staff works together to commit administrative crimes, he feared for his life and file directly to the court due to the fact staff refuses to give administrative forms." Id. To that end, the Court finds that BOP regulations also provide an alternative procedure for an inmate who "reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution." See 28 C.F.R. § 542.14(d). In such a case, the inmate is permitted to submit his administrative remedy request directly to the Regional Director. Id. The request must be clearly marked "Sensitive" and include a written explanation why it has not been submitted at the institution level. Id. If the Regional Administrative Remedy Coordinator agrees that the request is sensitive, it will be accepted for action at the regional level. Id. If the coordinator does not agree, the inmate is advised in writing that the request has not been accepted and that he may pursue the matter by resubmitting it at the institution level; the request itself is not returned, presumably for security reasons. Id. If resubmitted to the Warden, the inmate is entitled to a "reasonable extension" of the usual 20-day BP-9 filing period. Id.; see also id. § 542.14(a). Plaintiff provides no evidence that he attempted to avail himself of the filing of a "Sensitive" administrative remedy under 28 C.F.R. § 542.14(d). Nor does he provide any evidence that Defendants refused to provide Plaintiff with administrative forms. In fact, the record demonstrates the contrary; Plaintiff was provided with enough forms to file fifteen administrative remedies subsequent to the April 15, 2018 incident date.

Defendants have produced uncontroverted evidence which reveals that Plaintiff failed to properly exhaust his instant claims prior to initiating this action. Plaintiff failed to provide any evidence that he properly, or even attempted to properly, exhaust available administrative remedies concerning his *Bivens* claims. Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Moreover, aside from Plaintiff's conclusory allegation, he has submitted no record evidence that prison officials engaged in any affirmative misconduct such that they obstructed, hindered, delayed or prevented Plaintiff from pursuing administrative relief. *See Nyhuis*, 204 F.3d at 71 (stating that there is no futility exception to the exhaustion requirement under any circumstances). A prisoner is required to avail himself of the administrative remedies in order to satisfy the mandatory exhaustion requirement of the PLRA. Plaintiff's failure to properly pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims. Most recently, the Court of Appeals has held that "a prisoner exhausts his administrative remedies as soon as the prison fails to respond to a properly submitted grievance in a timely fashion." *Shifflett v. Korszniak*, ___ F.3d ___, 2019 WL 3772104 at *8 (2019). A properly submitted grievance nonetheless must be filed by a prisoner and, in this case, the plaintiff failed to do so. Accordingly, Defendants are entitled to an entry of judgment in their favor based on Plaintiff's failure to properly exhaust the administrative remedy process. *See Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust

all available administrative remedies prior to filing suit, including a *Bivens* action").

B. **Personal Involvement**

"In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law," *Azzara v. Scism*, 2012 WL 722342, *2 (M.D, Pa. 2012), citing *West*, 487 U.S. at 48; *Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992); *Sharpe v. Costello*, 2007 WL 1098961, *3 (M.D, Pa. 2007). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 n.3 (1981)); *Mitchell v. Beard*, 492 Fed. Appx. 230, 235 (3d Cir. 2012) (finding that the prisoner's allegations against four of the DOC defendants "that they are liable for improperly supervising those directly responsible for his injuries" were insufficient to state a claim). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Additionally, it is well established that a plaintiff may not sue to recover monetary damages against federal officials in their official capacities because *Bivens* claims against the United States are barred by sovereign immunity. *Williams v. Warmerdorf, et al.*, 2008 U.S. Dist. LEXIS 76283, *5, 2008 WL 4368568 (M.D. Pa. 2008)(citing *F.D.I.C. v. Meyer*,

11

510 U.S. 471, 483 (1994); *Jaffee v. U.S.*, 592 F.2d 712, 717 (3d Cir. 1979)). To proceed against federal officials in their individual capacities, the plaintiff must allege "personal direction or ... actual knowledge and acquiescence of constitutional violations." *Bartholomew v. Fed. Bureau of Prisons*, 2008 U.S. Dist. LEXIS 72787, 15-16, 2008 WL 4400170 (M.D. Pa. 2008)(granting "summary judgment on the *Bivens* claims because [the defendants] are immune from suit in their official capacities and because they were not personally involved in any constitutional deprivation").

Defendant Ebbert asserts that Plaintiff failed to allege his personal involvement and the doctrine of *respondeat superior* cannot serve as the basis of liability in a *Bivens* action. (Doc. 35); *Bivens*, 403 U.S. 388; *see also Davis v. Miner*, 2007 U.S. Dist. LEXIS 30789, 1-2, 2007 WL 1237924 (M.D. Pa. 2007). Aside from naming Defendant Ebbert in the caption of the complaint, Plaintiff fails to allege that Defendant Ebbert was personally involved in any way in the alleged April 15, 2018 incident. Rather, it appears that any claim he may assert against this Defendant would be premised upon his supervisory position within the BOP hierachy. However, such allegation is insufficient to satisfy the personal involvement requirement standard of Rode. Accordingly, Defendant Ebbert is entitled to dismissal.

## V. Conclusion

Based on the foregoing discussion, Defendant's motion for summary judgment will be granted. A separate Order shall issue.

Dated: September 10, 2019

Robert D. Mariani
United States District Judge